UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HSS ENTERPRISES, LLC, ) | Case No. C06-1485-JPD |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER PARTIALLY GRANTING |
| ) | PLAINTIFF'S MOTION TO COMPEL, |
| AMCO INSURANCE COMPANY, ) | AND DIRECTING FURTHER |
| ) | ACTION BY THE PARTIES |
| Defendant. ) | |
| _____) | |

## I. INTRODUCTION AND SUMMARY CONCLUSION

The present matter comes before the Court on the plaintiff's motion to compel production of documents withheld by the defendant on the basis of attorney-client privilege or the work product doctrine. Dkt. No. 25. The defendant has filed a response opposing this motion, see Dkt. No. 30, to which plaintiff has replied. Dkt. No. 32. After careful consideration of the motions, briefs, governing law, and the balance of the record, the Court ORDERS that plaintiff's Motion to Compel (Dkt. No. 25) be GRANTED IN PART.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff HSS Enterprises is an auto repair business located in Kennewick, Washington. Its primary business involves the sale and installation of new and used tires and related parts. On September 15, 2005, plaintiff's leased building in Kennewick caught fire. Because the building had no sprinkler system, much of its interior sustained fire, soot, smoke, and water

ORDER PARTIALLY GRANTING  PLAINTIFF'S MOTION TO
COMPEL, AND DIRECTING FURTHER ACTION BY THE PARTIES
PAGE – 1

damage.

At the time of the fire, plaintiff was insured through defendant AMCO Insurance Company under a "Premier Businessowners Policy." Plaintiff immediately reported the loss to defendant, and defendant assigned a "large loss" adjuster to determine the extent of the loss and otherwise investigate the claim. Two adjusters, three law firms, and two years later, that process continues, and gives rise to the present discovery dispute.

Defendant takes the position that its claim investigation is still ongoing. Instead of issuing or denying claim payments, defendant has paid to plaintiff over $200,000 in "advances" on business personal property and income loss or extra expense coverage in lieu of a final adjustment. The record reflects that defendant provided $108,498.25 for "advance of [business personal property,]" $33,916.69 for a "Northwest Restoration invoice," and $68,679.66 for income lost/extra expense presented to RGL Accounting. Dkt. No. 28, Ex. 3 at 93-96. On numerous occasions throughout 2006 and 2007, plaintiff sought information regarding how defendant's sporadic payments had been calculated or allocated under the various coverages under the policy. *See, e.g.*, Dkt. No. 28, Ex. 3 at 104-05, 112-16. Defendant provided no such information until September 20, 2007, when it produced a chart representing its assessment of the plaintiff's tire loss, but without information regarding the chart's author, its source of information, or date of creation. Dkt. No. 28, Ex. 4 at 138-40.

The parties dispute almost every factual aspect of this case. They dispute the policy terms, the inventories of the damaged property, the value of the tire loss, the work of public and private adjusters, the format of defendant's advances, the current status defendant's claim investigation and, of primary importance to the instant motion, the role of the law firms hired by the defendant—the Brady Law Chartered, and the firm of Betts, Patterson & Mines.

The Idaho firm of Brady Law Chartered was hired in June 2006 to monitor progress of the claim, conduct Examinations Under Oath ("EUO"), and assist defendant with its factual investigation and adjustment of the loss. Its hiring came shortly after a May 2006 incident

ORDER PARTIALLY GRANTING  PLAINTIFF'S MOTION TO
COMPEL, AND DIRECTING FURTHER ACTION BY THE PARTIES
PAGE – 2

where plaintiff's and defendant's adjusters engaged in a heated argument regarding plaintiff's proof of loss request. The fact that litigation commenced shortly thereafter was likely coincidental. Due to a one-year suit limitation provision in the insurance policy, plaintiff had little choice but to exercise that right, and filed suit in King County Superior Court on September 15, 2006, asserting claims for breach of contract, bad faith, and violation of the Washington Consumer Protection Act. *See* Dkt. No. 1, Ex. 1. One month later, defendant removed the case to this district pursuant to 28 U.S.C. §§ 1331 and 1441. At or near this time, defendant hired the Betts Patterson law firm to defend the coverage litigation and assigned a separate internal adjuster, Brian Ramage, to whom the Betts Patterson lawyers reported. Dkt. No. 28, Ex. 1 at 25-27.

Shortly thereafter, the parties agreed to a five-month stay of the litigation, see Dkt. No. 13, but during this time, the Brady attorneys (Mike Bray and Glenda Talbutt) and defendant's adjuster (Dale Walls) continued to assist defendant in investigating and adjusting plaintiff's claim. *See, e.g.*, Dkt. No. 28, Ex. 1 at 4. The record also reflects that as of late September 2007, the coverage work of these attorneys continued. *See* Dkt. No. 28, Ex. 4 at 124-36 (Glenda Talbutt letters to tire vendors); Dkt. No. 33 at 7-8 (Michael Brady letter); Dkt. No. 33 at 17-18 (Michael Brady letter); Dkt. No. 33 at 19 (Glenda Talbutt email). It is undisputed that, both before and after the suit was commenced, Brady Law attorneys handled the EUOs of plaintiff's management. The record also reflects the defendant's general view that EUOs are non-adversarial proceedings, despite the fact that they always hire attorneys to conduct EUOs. Dkt. No. 28, Ex. 1 at 26. Furthermore, discussions between the parties make clear that EUOs would be conducted by Brady lawyers, and depositions by Betts Patterson lawyers. *See* Dkt. No. 33 at 5-16. In sum, while some of the work performed by the Brady law firm may have been related to the underlying litigation in this case, it appears that the Brady law firm has acted primarily for investigation and coverage purposes, and the Betts Patterson law firm has served as litigation counsel.

01       In late October 2007, defendant produced three separate privilege logs: one relating to
02 the claim file, one relating to defendant's withheld "e-file," and one relating to Brady law firm
03 documents and correspondence. *See* Dkt. No. 28, Ex. 1 at 4-24. Defendant did not produce,
04 and its privilege logs do not include, documents from the files of the Betts Patterson law firm
05 or from the internal adjuster to whom the Betts Patterson attorneys report. The plaintiff seeks
06 all documents withheld by defendant on the basis of the work product protection or attorney-
07 client privilege between the insurer and Brady law attorneys.

## III.   DISCUSSION

09       The core of plaintiff's motion involves the attorney-client privilege and work product
10 doctrine—the two grounds for nondisclosure asserted by the defendant in this discovery
11 dispute. The plaintiff primarily argues that the documents it seeks are not privileged because
12 the Brady lawyers involved were hired by defendant to investigate and adjust its insurance
13 claim, not to defend the coverage litigation. Dkt. No. 25 at 11-13. In addition, the plaintiff
14 contends that those documents are not work product because they were prepared during the
15 ordinary investigation and adjustment of its insurance claim and before defendant
16 communication any coverage position; further, even assuming the doctrine applies, the plaintiff
17 argues that it has shown substantial need for the withheld documents. Dkt. No. 25 at 17-22.
18 In the alternative, the plaintiff argues that, should the Court not compel production of the
19 documents in question, the defendant must be precluded from offering evidence at trial based
20 on communications with or investigatory work performed by the Brady lawyers. Dkt. No. 25
21 at 24.[1]

---

[1] The Court's partial resolution of this motion does not require it to address several of plaintiff's sub-arguments, either because the material at issue is not privileged, or because a specific argument is premature at this time. Based on the current state of the record, however, it is clear that plaintiff has not met the civil fraud exception to any communications potentially protected by the attorney-client privilege. *See Barry v. USAA*, 98 Wn.App. 199, 205, 989 P.2d 1172, 1176 (Wash. Ct. App. 1999) (requiring a showing that "(1) [defendant] was engaged in or planning a fraud at the time the privileged communication was made, and (2) the

ORDER PARTIALLY GRANTING  PLAINTIFF'S MOTION TO
COMPEL, AND DIRECTING FURTHER ACTION BY THE PARTIES
PAGE – 4

A. <u>Washington Substantive Law and Federal Procedural Law Govern this Dispute</u>

Under the *Erie* Doctrine, a federal court sitting in diversity applies federal procedural law and the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). The attorney-client privilege, as a substantive evidentiary privilege, is governed by state law. *See* Fed. R. Evid. 501; *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D. Wash. 2007). The work product doctrine, on the other hand, is deemed a procedural immunity. *See Union Pacific R. Co. v. Mower*, 219 F.3d 1069, 1077 n.8 (9th Cir. 2000). Its application is therefore governed by the Federal Rules of Civil Procedure. *See, e.g.*, *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988).

B. <u>Attorney–Client Privilege</u>

The attorney-client privilege protects confidential communications between attorneys and clients from discovery or public disclosure. R.C.W. § 5.60.060(2)(a); *Hangartner v. City of Seattle*, 151 Wn.2d 439, 452, 90 P.3d 26, 32 (2004). Because the privilege "impedes full and free discovery of the truth," it must be strictly construed. *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir. 1989). The attorney-client privilege "[i]s not dependent whatsoever upon the anticipation of litigation, but instead depends upon the nature of the relationship involved." *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986). It protects only communications and advice between attorney and client in the context of a professional relationship involving the attorney *as an attorney*, not documents that are prepared for some other purpose. *Schmidt v. California State Auto. Ass'n*, 127 F.R.D. 182, 183 (D. Nev. 1989); *Kammerer v. W. Gear Corp.*, 96 Wn.2d 416, 421, 635 P.2d 708 (1981). The burden of establishing privilege rests on the party asserting it. *Versuslaw, Inc. v. Stoel Rives, LLP*, 127 Wn.App. 309, 332, 11 P.3d 866, 878 (2005).

---

communication was made in furtherance of that activity").

ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION TO
COMPEL, AND DIRECTING FURTHER ACTION BY THE PARTIES
PAGE – 5

In the insurance context, the question of whether a communication falls within the attorney-client privilege can often be a difficult one because of the investigatory nature of the insurance business. The line between what constitutes claim handling and the rendition of legal advice is often more cloudy than crystalline. However, it is obvious that the claim file and related material in an insurance bad faith action contains critical evidence regarding the investigation, analysis, and ultimate decision regarding an insured's claim. *See Brown v. Superior Court*, 670 P.2d 725, 734 (Ariz. 1983); *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 293 (D. Mont.1998). Accordingly, to the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply. *Mission Nat'l*, 112 F.R.D. at 163; *see also Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1367 (N.D. Ill. 1995) (attorney-client privilege did not attach where attorneys were acting more as "couriers of factual information" rather than "legal advisors"); *Schmidt v. California State Auto. Ass'n*, 127 F.R.D. 182, 183 (D. Nev. 1989) ("The entire claims file is not shielded by the attorney-client privilege because not all of the material within the claims file embodies confidential communications between the defendant and an attorney *acting in the role of attorney*.") (emphasis added). The public policy reason behind this conclusion is that insurance companies should not be permitted to insulate the factual findings of a claims investigation by the involvement of an attorney to perform, or help perform, such work.

Here, defendant insists that the attorney-client privilege applies to the communications between it and the Brady law firm because the firm's claims investigation work was not "routine," but it cites no authority supporting this proposition. It also points out that the firm was retained nine months *after* the fire, albeit before litigation commenced. As outlined above, in order to be subject to the attorney-client privilege, the communication must have been made for the purpose of rendering legal advice, not for documents prepared for some other purpose. *Admiral Ins. Co. v. U.S. District Court*, 881 F.2d 1486, 1492 (9th Cir. 1989);

*Kammerer*, 96 Wn.2d at 421, 635 P.2d at 710; *see also In re Grand Jury Investigation*, 974 F.2d 1968, 1070 (9th Cir. 1992) ("[T]he privilege is limited to only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.") (internal quotation omitted).  Here, the defendant does not deny that the Brady law firm was retained by the defendant to assist in investigating and adjusting plaintiff's fire loss claim, and the record reflects that this is precisely what those lawyers did.  *See, e.g.*, Dkt. No. 28, Ex. 1 at 4, Ex. 4 at 124-36; Dkt. No. 33 at 7-8, 7-19.  The efforts of and documents generated by the Brady lawyers were made for the purpose of claims investigation and adjustment, not for the purpose of rendering legal services in this litigation.  Accordingly, such materials are not protected by the attorney-client privilege.

      C.     Work Product Doctrine

The work product doctrine provides a qualified immunity for material prepared "in anticipation of litigation" by a party or its representative.  Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947).  The doctrine protects "trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews."  *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 549 (W.D. Wash. 2004).  The party asserting the work product doctrine has the burden of establishing, for each document, the rule's application.  *Id.*; *Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 472 (D. Ariz. 2001).

"It is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation."  *Id.* at 549-50.  Even if such documents might help in *preparation* for litigation, they do not qualify for work-product protection.  *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).  Rather, "the material must have been produced because of that prospect of litigation and for no other purpose."  *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 660 (S.D. Ind. 1991).  In the present context, insurance companies have a duty to

investigate, evaluate, and adjust claims made by their insureds.  *Heath*, 221 F.R.D. at 550.  The creation of documents during this process is part of the ordinary course of business of insurance companies, and the fact that litigation is pending or may eventually ensue does not cloak such documents with work-product protection.  *Id.*; *see also Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 535 (S.D. Ind. 1999).

      As explained above, the proponent of work product protection bears the burden of establishing, for each document, the doctrine's application.  *Heath*, 221 F.R.D. at 549.   Here, it is apparent that the defendant has chosen not to do so.  Neither its privilege log nor its brief show how the documents in question were generated solely for purposes of preparing the insurer's defense, rather than in the ordinary course of business.  Accordingly, any ruling by this Court can only be non-specific and only protect documents generated by defendant and its coverage counsel solely for the purpose of preparing a defense.

      The line between materials prepared in the ordinary course of business and work product prepared in anticipation of litigation evades precise demarcation.  Courts looks to a variety of formulas for the necessary nexus between the creation of the material and the prospect of litigation.  Some courts focus on the date a formal coverage position is taken.  *See*, *e.g.*, *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988) ("Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation.").  Some look to the date a lawsuit is threatened or filed.  *See, e.g.*, *Fontaine v. Sunflower Beef Carrier, Inc.*, 87 F.R.D. 89, 93 (D.C. Mo. 1980).  Other courts do not view these dates as necessarily critical, and instead adopt a case-by-case analysis.  *See, e.g.*, *Schmidt*, 127 F.R.D. at 184 ("[M]aterial generated by the defendant after the complaint was filed might still not have been prepared in anticipation of litigation if the material only concerned facts and did not involve legal opinions or thoughts about the defendant's trial strategy and posture.").

01         The Court finds that a case-by-case analysis is more appropriate, see *Schmidt*, 127

02 F.R.D. at 184 n.2, and therefore rejects defendant's argument that litigation is automatically

03 anticipated for work-product purposes when a suit is "commenced." *See* Dkt. No. 30 at 14-

04 15. An insurer's ordinary duty to investigate does not end when suit is filed, especially here,

05 where filing was precipitated more by a limitation clause than a threat to litigate, separate

06 litigation counsel was selected, and the parties immediately agreed to a lengthy stay. *See St.*

07 *Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 637 (N.D. Iowa

08 2000); *Harper*, 138 F.R.D. at 660. If the Court were to sustain the defendant's position

09 emphasizing the filing date of the lawsuit, the work product protection would be automatically

10 available at the whim of the insurer, regardless of whether the materials were prepared in the

11 ordinary course of business. Insurers could insulate all claims investigation materials produced

12 after the filing date by merely inserting an arbitrary suit limitation clause into its policy, and

13 forcing its insured to sue for coverage before the claim is fully adjusted. The Court cannot

14 accept this approach.

15                  1.      *Documents Not Protected by the Work Product Doctrine*

16         Beyond the policy's one-year limitation clause, which resulted in the filing of a

17 September 15, 2006 complaint, defendant has done very little to present "specific evidentiary

18 proof of objective facts demonstrating a resolve to litigate." *Pete Rinaldi's Fast Foods, Inc.*,

19 123 F.R.D. at 202. A heated argument between adjusters does not suffice.

20         The Court finds that the Brady attorneys were investigating whether (and what) factual

21 bases existed for providing or rescinding coverage under the policy, and as a result, documents

22 generated by that firm are not shielded by the work product doctrine. *St. Paul Reinsurance*

23 *Company, Ltd.*, 197 F.R.D. at 637 ("[T]he coverage determination does not equate with a

24 determination to litigate, but is instead part of the ordinary course of an insurer's business to

25 determine coverage."). Documents at this stage of the investigation are not protected, "even if

26 they include mental impressions, conclusions, and opinions of [Brady Lawyers] regarding the

availability of coverage, because these impressions, conclusions, and opinions are part of the pure investigation and evaluation of coverage, not part of preparation for or anticipation of litigation." *Id.* Such material, even if "generated by the defendant after the complaint was filed[,]" was not prepared in anticipation of litigation "if the material only concerned facts and did not involve legal opinions or thoughts about the defendant's trial strategy and posture." *Schmidt*, 127 F.R.D. at 184.

2. *Documents Protected by the Work Product Doctrine*

However, the Court finds that such material *is* protected work product, whether generated before or after the commencement of suit, if it concerned legal opinions, evaluations, or other thoughts about the trial strategy and posture of this coverage litigation. *Id.* While the Court does not have available the numerous documents withheld by the defendant, it is confident that the parties will be able to distinguish between, for example, reports generated *after* the September 2006 complaint which contain prior evaluations that are largely a continuation of the initial claims investigation, and reports that were generated solely for the purpose of preparing for the coverage litigation in this case. To the extent that a single document contains both coverage investigation information and counsel's mental processes bearing on trial strategy and posture, the defendant should be able to redact the latter such sections of the submitted documents.

IV. CONCLUSION

For the foregoing reasons, plaintiff's Motion to Compel (Dkt. No. 25) is GRANTED IN PART. The defendant is directed to submit new privilege logs to the plaintiff **no later than January 28, 2008**. The Court hereby compels production of all documents not protected by the attorney-client privilege and/or work product doctrine, and the same shall be produced to the plaintiff **no later than January 28, 2008**. The following guidelines shall apply to material included within defendants new privilege logs:

01   (1)  Communications between the defendant and the Brady law firm, and
02 documents generated by the Brady lawyers for the defendant, are not protected by the
03 attorney-client privilege.

04   (2)  Communications between the Betts Patterson law firm and the defendant,
05 however, are protected by the attorney-client privilege.

06   (3)  Documents generated by the Brady lawyers which relate to their investigation
07 and evaluation of plaintiff's insurance claim, as opposed to those lawyers' legal opinions or
08 thoughts about the defendant's trial strategy, are not protected by the work product doctrine.
09 This conclusion controls for documents produced before and after the date plaintiff's
10 complaint was filed.

11   (4)  To the extent a single document contains both coverage investigation
12 information and counsel's mental processes bearing on trial strategy, the defendant will redact
13 the latter such sections of the submitted documents.

14   (5)  After production of documents so ordered, and after production of a more
15 detailed privilege log identifying in greater detail the basis for any documents withheld, the
16 parties will meet and confer to determine if there are any remaining disputes. If there are, the
17 documents at issue will be identified and copies will be submitted for an *in camera* inspection.
18 The Court will then review the documents and schedule a hearing on the same.

19   The Clerk of Court is directed to send a copy of this Order to the parties of record.
20   DATED this 14th day of January, 2008.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge