01
02
03
04
05
06
07
08
09
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| HSS ENTERPRISES, LLC, | ) | Case No. C06-1485-JPD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER ON CROSS MOTIONS FOR |
| AMCO INSURANCE COMPANY, | ) | PARTIAL SUMMARY JUDGMENT |
| | ) | |
| Defendant. | ) | |
| | ) | |

15      I.   INTRODUCTION AND SUMMARY CONCLUSION

16      The present matter comes before the Court on plaintiff's Motion for Partial Summary

17  Judgment Regarding Coverage for Contents (Dkt. No. 47) and defendant's Motion for Partial

18  Summary Judgment to Dismiss Claim for Lost Profits Incurred After September 12, 2006

19  (Dkt. No. 46).  On March 26, 2008, due to the nearness of trial, the Court entered an Order

20  granting plaintiff's motion regarding coverage and denying defendant's motion on lost profits,

21  specifying that a memorandum opinion would follow.  Dkt. No. 62.  Due to concerns

22  regarding proof of lost profit damages (and the methodology thereof), the Order granted

23  defendant additional time to supplement the report of its expert, Katharyn Thompson of RGL

24  Forensics.  *Id.*  In response to the Court's Order, defendant filed a "Motion for

25  Reconsideration of Ruling on HSS's Motion for Partial Summary Judgment" (Dkt. No. 63), to

26  which the plaintiff has recently replied.  Dkt. No. 67.

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 1

After careful consideration of the motion, briefs, governing law and the balance of the record, the Court ORDERS that plaintiff's Motion for Partial Summary Judgment Regarding Coverage for Contents (Dkt. No. 47) is GRANTED and defendant's Motion for Reconsideration (Dkt. No. 63) is DENIED.  The Court further ORDERS that defendant's Motion for Partial Summary Judgment to Dismiss Claim for Lost Profits Incurred After September 12, 2006 (Dkt. No. 46) is DENIED.

## II.   FACTS AND PROCEDURAL BACKGROUND

This case involves a suit to recover damages based on an insurance contract, as well as extra-contractual damages under Washington's substantive bad faith law, the Washington Consumer Protection Act ("CPA"), and attorneys' fees.  Plaintiff HSS Enterprises, LLC ("HSS" or "plaintiff"), is an auto repair company located in Kennewick, Washington.  Its primary business involved the sale and installation of new and used tires and related parts.  On or about September 12, 2005, plaintiff's leased building in Kennewick caught fire.  Because the building had no sprinkler system, much of its interior sustained fire, soot, smoke, and water damage.  At the time of the fire, plaintiff was insured through defendant AMCO Insurance Company ("AMCO" or "defendant").

After the fire occurred, Rad Howard, the president and owner of HSS, reported the loss to AMCO.  The first adjuster assigned by AMCO to the claim was Bill Wilson.  Howard Decl., ¶ 5, Dkt. No. 50.  Mr. Wilson went through the entire building.  He viewed the contents, including the tools and other equipment.  Wilson Decl. ¶ 4, Dkt. No. 51.  He concluded that, because all of the building contents had been exposed to high heat and smoke, even the tools and equipment without readily apparent damage had likely sustained damage.  *Id.*  He therefore considered that all of the contents were damaged and did not "bring[] in a tool or equipment specialist because of the large volume of tools and equipment that would have required testing, and because it would not have been economically practicable for AMCO to test each item."  *Id.*  Mr. Wilson told Mr. Howard that "all of the contents of the building were a total loss by

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 2

01 AMCO," *id.*, and further told him that he could dispose of the contents as he wished,

02 suggesting that some of the tools could be sold for scrap metal.  Howard Decl. ¶ 6, Wilson

03 Decl. ¶ 6.

04       AMCO had inventory specialists who would ordinarily inventory and inspect contents

05 after a large fire loss.  However, none were available to work on the HSS fire loss, and

06 therefore Mr. Wilson asked Mr. Howard to hire someone at AMCO's expense.  Wilson Decl. ¶

07 8.  At Mr. Wilson's recommendation, HSS retained Northwest Restoration to conduct an

08 inventory.  *Id.*   Northwest Restoration completed such an inventory.  Approximately six weeks

09 after the fire, HSS hired Drew Lucurell, a public adjuster, to help with the insurance claim.

10 Using the Northwest Restoration inventory, a business property claim ("Business Property

11 Claim Spreadsheet") was prepared and submitted to AMCO.  Howard Decl. ¶ 8.  The Business

12 Property Claim Spreadsheet is part of the record in this matter as Exhibit 111.  Howard Decl. ¶

13 11, Denton Decl. ¶ 4 at 22-25, Dkt. No. 48.

14       Although AMCO approved disposing of everything, Mr. Lucurell recommended

15 holding on to some items until the claim was fully paid.  Howard Decl. ¶ 9.  However, because

16 the tires could not be stored, HSS sought and received permission to destroy the 1,300 tire

17 inventory.  In addition, some items were sent to an auction yard, where they have since been

18 exposed to the elements, and some were sent to a large storage rooms, unused to the present

19 date.  Howard Decl. ¶ 9-10.

20       On January 7, 2008, nearly two and a quarter years after the fire, AMCO provided an

21 expert report that indicated for the first time that some of the items in the building at the time of

22 the fire (and on the Business Property Claim Spreadsheet) were not, in fact, damaged in the

23 fire.  Howard Decl. ¶ 11; Dkt. No. 48, Ex. K (Bilancia Report).  However, AMCO has not

24 denied coverage for any specific item on the grounds that it was not damaged; nor has it

25 identified any items on the Business Property Claim Spreadsheet it currently claims were not

26 damaged by the fire; nor has it identified which items it has paid for by its partial payments.

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 3

01  *See, e.g.*, Key Dep. (AMCO 30(b)(6) witness), Dkt No. 48, Ex. F at 38-40; Walls Dep.

02  (current AMCO adjuster) Dkt. No. 48, Ex. G at 44-47.  The plaintiff's motion seeks partial

03  summary judgment declaring, as a matter of law, that the defendant is estopped from

04  repudiating its previous position that the contents of the building were damaged by a covered

05  cause of loss and that the items identified in plaintiff's Business Property Claim Spreadsheet

06  (Ex. 111) are covered under the applicable AMCO policy.

07      AMCO has also filed a motion for partial summary judgment to dismiss claims for lost

08  profits incurred after September 12, 2006.  AMCO paid the loss of business income claim

09  under the policy in question for the twelve-month period running from the date of the loss,

10  September 13, 2005, through September 12, 2006.  HSS has provided notice to AMCO that it

11  intends to seek $260,747 for lost profit damages incurred after September 12, 2006.  AMCO

12  asserts that HSS has failed to produce evidence demonstrating that the lost profits are a result

13  of AMCO's conduct, failed to timely disclose expert witness testimony, and presented expert

14  testimony that is methodologically flawed.

15      The trial in this matter is set for May 19, 2008.  The case was filed in September 2006,

16  due to a one-year suit limitation provision in the insurance policy, but was stayed through June

17  1, 2007, to permit the parties to try to resolve the dispute without need for litigation.  The case

18  did not settle.  In August 2007, discovery requests were propounded, and depositions began

19  three months later.  Denton Decl. ¶ 9-10.  Dkt. No. 56.  The expert disclosure deadline was set

20  for January 7, 2008.  Dkt. No. 23.  An attempted mediation in mid-January was unsuccessful,

21  and on January 23, 2008, HSS provided information regarding its post-September 2006 losses.

22  A supplemental expert report was provided on January 28, 2008, by Mr. Lucurell.  His analysis

23  is neither complex nor detailed.  He simply took HSS's calculation of its pre-September 2006

24  lost profits calculation and extended it from September 2006 through November 2007, using an

25  annual profit growth rate of 13.04 percent, which was the percentage calculated by AMCO's

26  expert.  Dkt. No. 49, Ex. I.

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 4

III.   JURISDICTION

This action was removed pursuant to 28 U.S.C. § 1441.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to having this matter heard by the undersigned Magistrate Judge.  Subject matter jurisdiction exists under 28 U.S.C. § 1332.  The Court has general and specific personal jurisdiction over AMCO because it conducted substantial business in this jurisdiction or otherwise purposely availed itself of the benefits and protections of the forum state, and the alleged cause of action arose out of its forum-related activities.  Venue is proper under 28 U.S.C. § 1391(b).

IV.   CHOICE OF LAW

Under the *Erie* Doctrine, a federal court sitting in diversity applies federal procedural law and the substantive law of the forum state—here, the State of Washington.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).  Should the Court be faced with a legal question unaddressed by the forum state's judiciary, it must predict how the Washington Supreme Court "would probably rule in a similar case."  *King v. Order of United Commercial Travelers*, 333 U.S. 153, 161 (1948).

V.   SUMMARY JUDGMENT STANDARD

"Claims lacking merit may be dealt with through summary judgment" under Rule 56 of the Federal Rules of Civil Procedure.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it "might effect the outcome of the suit under the governing law."  *Id.*

When applying these standards, the Court must view the evidence and draw reasonable

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 5

01 inferences therefrom in the light most favorable to the nonmoving party. *United States v.*

02 *Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its

03 initial burden by producing affirmative evidence that negates an essential element of the

04 nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed

05 to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

06 *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

07        Once this has occurred, the procedural burden shifts to the party opposing summary

08 judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the

09 merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the

10 veracity of everything offered or show a mere "metaphysical doubt as to the material facts."

11 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The mere

12 existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute.

13 *Anderson*, 477 U.S. at 252. To avoid summary judgment, the nonmoving party must, in the

14 words of the Rule, "set forth specific facts showing that there is a genuine issue for trial." Fed.

15 R. Civ. P. 56(e). The nonmoving party's failure of proof "renders all other facts immaterial,"

16 creating no genuine issue of fact and thereby entitling the moving party to the summary

17 judgment it sought. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

18                                    VI.   DISCUSSION

19        A.      Plaintiff's Motion for Partial Summary Judgment

20        For more than two years, HSS was led to believe that the fire resulted in a total loss (at

21 least as far as the Business Personal Property ("BPP") limits were concerned). *See* Wilson

22 Decl. ¶¶ 5-8, Dkt. No. 51. The relevant portions of the policy provide:

23        A.      **COVERAGES**

24              We will pay for direct physical loss of or damage to Covered Property at the
                premises described in the Declarations caused by or resulting from any Covered
25              Cause of Loss.

26

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 6

B.   **Business Personal Property** located in or on the buildings at the described premises or in the open . . . within 1,000 feet of the described premises, consisting of the following:

1)   Personal property you own that is used in your business, including but not limited to furniture, fixtures, machinery, equipment and "stock";
. . . .
. . . .

18)   "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Denton Decl., Ex. A, Dkt. No. 48.

The policy had BPP limits of approximately $280,000.  Denton Decl., Ex. C, Dkt. No. 48.  In September 2005, Mr. Wilson, the adjuster selected by AMCO, declared the items covered by the BPP portion of the policy a total loss.   *See* Wilson Decl. ¶¶ 5-8, Dkt. No. 51.  It was not just Mr. Wilson who came to this conclusion.  In February 2006, Dale Walls, a second adjustor for AMCO also concluded "The BPP loss has not been evaluated relative to ITV [(Insurance to Value)].  It appears that the loss will exceed the coverage available, but line by line pricing has yet to be performed."  Denton Decl. Ex. B., Dkt. No. 48.

In November and December 2005, HSS submitted initial claims for lost tire inventory in the amount of $184,586.84 and business personal property of $48,570.20, based on the policy provisions providing for replacement cost coverage.  Gottlieb Decl., Ex. E, Dkt. No. 49.  HSS did not originally include a claim for tools and equipment in its original claim, AMCO asserts, because HSS believed that the claim was worth more than the limits without the equipment and that making a claim could cause it to lose rights to the equipment.  Dkt. No. 57 at 5.

In August 2006, AMCO conducted the first of two Examinations Under Oath ("EUOs").  This was the first time that HSS became aware that its tire claim was worth less than it thought because the damage to the tire inventory is apparently limited to actual cash value rather than replacement cost, and some of the damaged tire inventory consisted of used tires.  Gottlieb Decl., Ex. E at 48, Dkt. No. 49.  Accordingly, HSS amended its claim to then

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 7

01 | include the tools and equipment that were in the building at the time of the fire.  AMCO then

02 | took the position that the revised claim entitled it to a second EUO, which took place in

03 | September 2007, or two years after the fire.  *Id.*

04 |     The record establishes that the first time that HSS found that AMCO was changing its

05 | position regarding whether HSS had suffered a "total loss" on this policy was either on January

06 | 7, 2008, as HSS contends, when it received the Bilancia expert report (Denton Decl., ¶ 12, Ex.

07 | K, Dkt. No. 48), or perhaps two months earlier, as AMCO claims, on November 6, 2007, when

08 | HSS became aware of the investigation being performed by Mr. Bilancia.  Dkt. No. 57 at 7;

09 | Dkt. No. 58, Ex. G (Walls Dep.); Dkt. No. 48, Ex. K (Bilancia Report).

10 |     Prior to either EUO, HSS had removed equipment and tools from the premises.  Some

11 | items were sent to an auctioneer.  The auctioneer moved these items outside, where they were

12 | exposed to the elements.  Other items were stored in a large storage room, where plaintiff

13 | asserts they have been unused and deteriorating due to lack of temperature or moisture control.

14 | Howard Decl. ¶10, Dkt. No. 50.  HSS has made a claim for the business personal property

15 | damaged by the fire of $311,006.28.  Denton Decl., Ex. C, Dkt. No. 48.  This is in excess of

16 | the policy limits, which are approximately $280,000.  *Id.*  AMCO has made an "advance" on

17 | the BPP policy in the amount of $35,000 in September, October, and December, 2005, and an

18 | additional payment of $108,498.25 in March 2006.  Denton Decl., Ex. D, Dkt. No. 48.  No

19 | further payments have been made on the September 2005 fire, and indeed, apart from an

20 | adjustment for tires, AMCO has been unable to state which items have been paid for and which

21 | items have not.  Howard Decl. ¶13, Dkt. 50.

22 |     This case is now on the eve of trial.  HSS's partial summary judgment motion seeks a

23 | ruling that AMCO is estopped from repudiating its previous position to its insured that there

24 | was a total loss of the contents of the building at the time of the September 2005 fire, that

25 | HSS's BPP was damaged by a covered cause of loss, and that these contents are covered under

26 | the applicable AMCO policy.

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 8

01    The doctrine of equitable estoppel precludes an insurer from asserting a claim or

02 position contrary to an earlier position on which its insured reasonably relied. *Saunders v.*

03 *Lloyd's of London*, 113 Wash.2d 330, 341-42, 779 P. 2d 249 (1989); *Buchanan v. Switzerland*

04 *General Ins. Co.,* 76 Wash.2d 100, 109, 455 P.2d 344 (1969).  It is not favored and therefore

05 requires clear, cogent, and convincing evidence of: (1) an admission, statement, or act

06 inconsistent with a claim afterward asserted; (2) action by the other party in reasonable reliance

07 on that act, statement, or admission; and (3) injury to the relying party if the court allows the

08 first party to contradict or repudiate the prior act, statement, or admission.

09 *Berschauer/Phillips Const. Co. v. Seattle School Dist. No. 1*, 124 Wash.2d 816, 831, 881 P.2d

10 986, 994 (1994).

11

12          1.     *HSS Has Provided Clear, Convincing and Cogent Evidence of*
                   *Statements of the Extent of the Loss by AMCO that AMCO Now*
                   *Seeks to Disavow*

13

14    There is no dispute that after inspecting the fire scene, damage, and contents of the

15 building in the fall of 2005, AMCO represented to HSS that all tires, tools, equipment, and

16 other contents of the building "were a total loss by AMCO."  Dkt. No. 47 at 4; Dkt. No. 57 at

17 4; Wilson Decl. ¶ 6, Dkt. No. 51, Howard Decl. ¶ 6, Dkt. No. 50.  Even AMCO admits that

18 while its adjuster explained that "'[t]he damage to the contents of the building varied,'" the

19 adjuster "nevertheless stat[ed] that . . . 'due to the exposure to fire, heat, and smoke, all of the

20 contents of the building were a total loss by AMCO.'" Dkt. No. 57 at 3-4 (quoting Wilson

21 Decl. ¶¶ 5, 6, Dkt. No. 51).  This satisfies the first element of equitable estoppel under

22 Washington law.

23    AMCO points to several email correspondences between Mr. Wilson and Mr. Howard

24 in an attempt to create a genuine issue of fact regarding the above-mentioned representation

25 made by AMCO through its former adjuster, Mr. Wilson.  *See* Dkt. No. 57 at 4-5, 12-13 (citing

26

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 9

01  Gottlieb Decl., Exs. A, B, C, Dkt. No. 58).  First, these email correspondences do not negate

02  the fact that the parties *do not dispute* that Wilson made the representations he made.

03      Second, the substance of these email communications does not change the result of the

04  plaintiff's instant motion, which asserts that damage in fact occurred without addressing the

05  degree of damage to the contents of the building.   To conclude otherwise would conflate the

06  fact of damage with the extent of damage in this case.  To sustain a finding of a "total loss," it

07  is not necessary to show that every piece of material in the building was destroyed.  *Cf.*

08  *Grandview Inland Fruit Co. v. Hartford Fire Ins. Co.*, 189 Wash. 590, 598, 66 P.2d 827, 831

09  (1937).  Nor does the existence of some salvage value does preclude the conclusion that there

10  has been a total loss. 12 COUCH ON INSURANCE § 175.81 (3d ed. 2007).  AMCO argues that

11  the emails in which Wilson and Howard clarify how to dispose and replace property suggest

12  "there was no general assumption that everything was fire damaged or a covered loss."  Dkt.

13  No. 57 at 12.   However, this clarification is necessary given the nature of a "total loss" in

14  which some of the property may be salvageable or recycled for another purpose.  Plaintiff's

15  partial motion for summary judgment deals only with AMCO's representation regarding the

16  issue of *whether* the contents of the building were damaged, not the *extent* to which this

17  material was damaged under the terms of the policy.  Indeed, HSS recognizes that the extent of

18  damage is an issue to be determined at time of trial. Dkt. No. 59 at 5, 7.

19      HSS took certain actions based on AMCO's 2005 clear representation that "all of the

20  contents of the building were damaged" and constituted a "total loss by AMCO," Wilson Decl.

21  ¶¶ 5, 6, Dkt. No. 51, which statements, they argue, AMCO should be estopped from

22  repudiating at trial.  This issue can be decided on summary judgment.  The extent of damage,

23  however, remains disputed and will be left for trial.  Based on the *extent* of damage, the policy

24  obligates AMCO to pay for the cost of repair, the cost to replace, or the actual cash value.  *See*

25  Dkt. No. 12, Ex. A at 3-4.  Accordingly, genuine disputes regarding the extent of damage or

26  salvage value in light of applicable policy limits, as perhaps evidenced by the parties' email

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 10

01 conversations, are not "material" under governing law relative to the narrow ground on which

02 HSS seeks summary adjudication. *Anderson*, 477 U.S. at 248.

03
04              2.      *HSS Reasonably Relied on the AMCO Assurances that HSS*
                        *Sustained a Total Loss Under the Terms of the Policy*

05          The insured's reliance must be reasonable in order to create estoppel, "but estoppel can

06 arise by silence when one has a duty to speak out." *Saunders*, 113 Wash.2d at 340, 779 P.2d

07 at 255.  Furthermore, the party claiming to have been influenced by the conduct, silence, or

08 declarations of another must have "either lacked knowledge of the true facts or could not

09 acquire them." *Howard v. Dimaggio*, 70 Wash.App. 734, 740, 855 P.2d 335, 338 (1993)

10 (citing *Public Utility District No. 1 v. Washington Pub. Power Supply Sys.*, 104 Wash.2d 353,

11 365, 705 P.2d 1195, 1205 (1985)); *but see Saunders*, 113 Wash.2d at 340, 779 P. 2d at 255

12 (noting that this requirement exists "in some contexts"), *and Allen v. Prudential Ins. Co.*, 67

13 Wash.2d 845, 857, 410 P.2d 586, 593 (1966) (suggesting requirement may not apply in "cases

14 where neither party was an insurance company with far superior knowledge, or a prior course

15 of dealing"); *see also Wechner v. Dorchester*, 83 Wash. 118, 122, 145 P. 197, 198 (1915)

16 (finding no estoppel where both parties had complete knowledge of the transfers and neither

17 party made any representations or deceptions concerning them).

18          Here, there is no dispute that, as a result of its conclusion that "all of the contents of the

19 building were a total loss," AMCO suggested that HSS hire Northwest Restoration to

20 inventory and dispose of the damaged property, never suggesting that the contents be inspected

21 for damage.  Wilson Decl. ¶ 8, Dkt. No. 51.  Specifically, AMCO "gave Northwest Restoration

22 instructions to inventory the contents" of the building, and "told Rad Howard [of HSS] that

23 AMCO would pay for Northwest Restoration's work."  *Id.*  Based on AMCO's total loss

24 representation and efforts to secure a contents inventory specialist, HSS chose not to conduct

25 its own investigation or take additional steps to preserve any items in their original condition.

26 *See id.* ¶ 5 (choosing "not [to] bring[] in a tool or equipment specialist because . . . it would not

01  have been economically practicable for AMCO to test each item"); *id.* ¶ 6 (stating that "all of

02  the contents of the building were a total loss by AMCO," telling HSS that it "could dispose of

03  the contents as [it] saw fit," and "suggest[ing it] might try to sell the tools for scrap metal").

04      HSS reasonably relied on the statements of Wilson that the building personal property

05  was a total loss after the fire.  No rational jury could conclude otherwise.  HSS, as the insured

06  party, was under the influence of Wilson who was acting as the insurance adjustor for AMCO.

07  Howard Decl. ¶ 5, Dkt. No. 50; *see Public Utility District No. 1*, 104 Wash.2d at 365, 705

08  P.2d at 1205.  An adjustor, as defined by Washington law, is "a person who . . . investigates or

09  reports to his principal relative to claims arising under insurance contracts, on behalf solely of

10  either insurer or the insured."  R.C.W. § 48.17.050.  It was more than reasonable for HSS to

11  assume that Wilson was acting under the apparent authority of AMCO, its insurer and Wilson's

12  employer.  Washington law has held that "circumstances are sufficient to establish apparent

13  authority when an ordinarily prudent person reasonably conversant with business practices and

14  customs would have been misled thereby."  *Northside Auto Serv., Inc. v. Consumers United*

15  *Ins. Co.*, 25 Wash.App. 486, 490, 607 P.2d 890, 893 (1980) (affirming trial court's order

16  estopping insurance company from denying contract after repair company relied on adjustor's

17  statements regarding car repairs).

18      Given that Wilson was employed by AMCO as a "Large Loss Adjustor" and was

19  assigned the HSS loss, it was reasonable for HSS to rely on these circumstances and conclude

20  that Wilson had apparent authority to make statements on behalf of AMCO.  Wilson Decl.      ¶

21  1-2, Dkt. No. 48.  Indeed, AMCO also relied on Wilson's representation of a total loss.  The

22  record is undisputed that neither party investigated further, until October 2007, when AMCO

23  retained Mr. Bilancia to examine the items in storage.  Dkt. No. 57 at 7; Dkt. No. 48, Ex. K

24  (Bilancia Report). HSS, therefore, had no "knowledge of the true facts or a means of acquiring

25  those facts" material to whether the damage to the property resulted in a total loss.  *Shows v.*

26  *Pemberton*, 73 Wash.App. 107, 112, 868 P.2d 164, 167 (1994).

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 12

01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

3.     *HSS Has Been Injured and Would Be Further Injured if AMCO Is Allowed to Repudiate Its Earlier Statements that HSS Sustained a Total Loss Under the Terms of the Policy*

"In Washington, the 'injury' element requires the party asserting equitable estoppel to show a detrimental change of position based upon the [other party's] representation." *Silverstreak, Inc. v. Washington State Dept. of Labor and Indus.*, 159 Wash.2d 868, 889, 154 P.3d 891, 902 (2007). Injury may also be found where a party's act or omission gives rise to a legal dispute in the matter before the court. *See, e.g.*, *East Lake Water Ass'n v. Rogers*, 52 Wash.App. 425, 430, 761 P.2d 627, 631 (1988).

Here, the injury element of equitable estoppel has been satisfied. Based on HSS's reasonable reliance on AMCO's representation that "all of the contents of the building were a total loss," HSS chose not to conduct its own investigation or make a claim for all the damaged items. Because "[i]t believed that its claim was worth more than the limits without the equipment," it assumed it was unnecessary to claim all damaged property in order to obtain the full policy payment. Dkt. No. 59 at 7; Dkt. No. 57 at 5. Accordingly, HSS placed some of the property in storage and disposed much of it for scrap. Had HSS not reasonably relied on the statement, it would not have disposed of the property this way. There is no material dispute that HSS made a detrimental change of position based on AMCO's previous representations.

Furthermore, it is undisputed that AMCO previously represented that all of the contents of the building were damaged by fire and that this loss was total. It is equally undisputed that for more than two years following its "total loss" representation, AMCO failed to investigate HSS's claim, failed to pay the claim, and failed to communicate any reason for its failure to pay. *See, e.g.*, Denton Decl., Ex. F, Dkt. No. 48. These actions led to the instant lawsuit. To date, AMCO has not denied coverage for any particular item on the ground that it was not damaged. *See id.* This remains true despite the recent investigation of Mr. Bilancia. It would be inequitable for AMCO to now be able to take the position that certain items were not damaged

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 13

01  or otherwise present a defense contrary to the position it represented, without contradiction,

02  for over two years.  HSS would be severely prejudiced were such a position countenanced at

03  trial.

04       Accordingly, based solely on the summary judgment materials submitted, HSS is

05  entitled to a declaration that all items on its Business Property Claim Spreadsheet were

06  damaged and covered by the policy.  This does not, however, relieve HSS of its obligation to

07  prove the actual loss sustained by such damage, which is a matter for trial.

08       B.      Defendant's Motion for Reconsideration

09       On April 3, 2008, AMCO filed a Motion for Reconsideration of this Court's "Orders on

10  Motions for Partial Summary Judgment" entered March 26, 2008.  Dkt. No. 63.  The motion

11  asks the Court to reconsider and reverse its ruling on HSS's partial motion for summary

12  judgment, based on Fed. R. Civ. P. 59(e), 60(b), and Local Rule CR 7(h)(1).  Dkt. No. 63 at 5-

13  6.  At issue are the original declaration statements of Mr. Wilson, submitted by HSS, which

14  establish, *inter alia*, the representation that "all of the contents of the building were a total loss

15  by AMCO."  Wilson Decl. ¶ 6, Dkt. No. 51.  Plaintiff has responded to this motion upon the

16  direction of the Court.  Dkt. No. 67.

17       1.      *Governing Law*

18       A district court may reconsider its grant of summary judgment under Fed. R. Civ. P.

19  59(e) (motion to alter or amend a judgment), Fed. R. Civ. P. 60(b) (relief from judgment), or

20  Local Rule CR 7(h).  *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d

21  1255, 1262 (9th Cir. 1993).

22       Pursuant to Local Rule CR 7(h)(1), motions for reconsideration are disfavored and

23  will ordinarily be denied absent a showing of:  (a) manifest error in the prior ruling; or (b) facts

24  or legal authority which could not have been brought to the attention of the Court

25  earlier, through reasonable diligence.  Local Rule CR 7(h)(1); *see also Bell Consumers, Inc. v.*

26  *Lay*, 203 F. Supp. 2d 1202, 1210 (W.D. Wash. 2002).  This analysis substantially mirrors

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 14

01  reconsideration under Fed. R. Civ. P. 59(e), which is proper when the court (1) is presented

02  with newly discovered evidence; (2) committed clear error; or (3) if there is an intervening

03  change in the controlling law. *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th

04  Cir. 1999).  The Ninth Circuit warns that a Rule 59(e) motion "should not be granted, absent

05  highly unusual circumstances." *Id.* (citing *School Dist. No. 1J*, 5 F.3d at 1263)

06    Federal Rule of Civil Procedure 60(b) regulates the procedure for obtaining relief from

07  final judgments.  Motions to reopen premised upon mistake, surprise, inadvertence, or

08  excusable neglect (Rule 60(b)(1)); newly discovered evidence (Rule 60(b)(2)); or fraud (Rule

09  60(b)(3)) must be brought "not more than one year after the judgment, order, or proceeding

10  was entered or taken." Fed. R. Civ. P. 60(b)(1)-(3).   If the asserted ground for relief from the

11  prior judgment does not fall within one of the specific categories enumerated in Rule

12  60(b)(1)-(5), relief may be available under the residual provision of the rule. *See* Fed. R. Civ.

13  P. 60(b)(6).

14      2.   *Factual Background*

15    The February 21, 2008 declaration of former AMCO adjuster Bill Wilson was an

16  important component of the equitable estoppel claim on which HSS's partial summary

17  judgment motion was based. *See* Dkt. No. 47 at 3-5, 11-12, *and* Wilson Decl., Dkt. No. 51.

18  In this original declaration, and among other statements, Wilson represented to HSS's Rad

19  Howard that "all of the contents of the building were a total loss by AMCO," which set in

20  motion the series of acts, omissions, and consequences chronicled above. *See supra* § VI.A.

21    The declaration now presented by Wilson, through AMCO, appears to contradict some

22  of his previous statements. *See* Second Wilson Decl., Dkt. No. 65.  According to Wilson, his

23  original declaration contains false statements of material fact that he did not intend to be a part

24  of the declaration.  Specifically, Wilson now attests that before signing his original declaration,

25  he told plaintiff's counsel to make changes to certain paragraphs that did not accurately

26  represent the statements he made to Howard.  Second Wilson Decl. ¶ 4, Dkt. No. 65.

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 15

01    According to Wilson, the changes were never made. *Id.* ¶ 8. A picture is painted of an

02 attorney playing fast-and-loose with the obligations owed a declarant and the bar in this

03 situation which, among other reasons, prompted this Court to direct a response to AMCO's

04 Motion for Reconsideration.

05        Among other modifications, Wilson now claims he instructed plaintiff's counsel to

06 remove the phrase "total loss" from paragraph six's statement that "all of the contents of the

07 building were a *total loss* by AMCO.'" *Id.* (citing Wilson Decl. ¶ 6, Dkt. No. 51) (emphasis

08 added). Now appearing to be surprised about the contents of his original declaration, Wilson

09 explains:

> 10
> 11 This is not what I thought at the time I initially met with HSS. As the adjustment progressed I never said that to Mr. Howard, and [it] is not something that I would testify to now. . . .
>
> 12
> 13
> 14 I can see that some of the statements I was told would be removed are still in my declaration, especially the issue about whether everything was a total loss. That is a mistake. I signed the declaration in a hurry as I was just leaving for Tacoma and because I was told there was a deadline for the declaration to be filed. I trusted counsel would take these statements out.

15 *Id.* ¶¶ 6, 8.

16           3.   *AMCO Has Failed to Meet Its Reconsideration Burden*

17        The Court finds that AMCO has failed to meet its burden of establishing a "mistake"

18 under Fed. R. Civ. P. 60(b)(1), fraud or misrepresentation under Rule 60(b)(3), newly

19 discovered evidence under Rules 60(b)(2) and 59(e), or any other error warranting relief under

20 Rule 59(e) or Local Rule CR 7(h)(1).

21        First, the evidence set forth in Wilson's original declaration was not submitted by

22 mistake, fraud, or misrepresentation. Wilson's new, conclusory allegation that he requested

23 removal of the phrase "total loss" from paragraph six is belied by the record. Over the course

24 of two days in February 2008, Counsel for HSS corresponded with Wilson no less than five

25 times over the form of his declaration. *See* Dkt. No. 68, Exs. A-F. No less than three revised

26 versions were exchanged, reflecting changes made to the declaration at the behest of Wilson,

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 16

01   including changes made regarding the amount and extent of damage HSS sustained by the fire.

02   *See id.* Exs. C-F. Finally, during the afternoon of February 21, 2008, Wilson faxed to HSS a

03   signed version of the declaration under the penalty of perjury.  Through five correspondences,

04   three revisions, and the signed fax, Wilson had more than ample time to review the contents of

05   his declaration.  Although certain areas of his declaration were tweaked, paragraph six's

06   statement that "all of the contents of the building were a total loss by AMCO" never changed.

07   *See id.* Ex. A at 3, ¶ 6, Ex. B at 3, ¶ 6, Ex. C at 3, ¶ 6, Ex. D at 3, ¶ 6, Ex. E at 3, ¶ 6, Ex. F at

08   3, ¶ 6.  AMCO's unhappiness with the Court's summary judgment Order, or Wilson's

09   carelessness in his voluntary actions under the penalty of perjury, does not rise to the level of

10   mistake or misrepresentation necessary for reconsideration relief under 60(b).[1]

11         Second, the information gleaned from Wilson's new declaration is not "newly

12   discovered evidence" under Fed. R. Civ. P. 59(e) or Local Rule CR 7(h)(1).  It was or could

13   have been known by AMCO, and could have been brought to the attention of the Court much

14   earlier, through reasonable diligence.  Wilson was a former employee of AMCO who acted on

15   its behalf during a critical period in this case.  Although AMCO suggests it was surprised to

16   learn of Wilson's "total loss" representations and his subsequent displeasure with the results of

17   his original declaration, the record belies this contention.  AMCO received Wilson's original

18   declaration as a part of HSS's partial summary judgment motion filed on February 21, 2008.

19   Dkt. Nos. 47, 51.  Thereafter, AMCO had *eighteen days* to recognize, discuss, and address the

20   damaging statements made by Wilson before filing its summary judgment response.  AMCO

21   failed to do so.  Furthermore, as the party that repeatedly declined to provide Wilson's contact

22

23

---

24       [1] *See* 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE
    § 2858 (2007) ("Relief will not be granted under Rule 60(b)(1) merely because a party is unhappy
25   with the judgment.  Instead the party must make some showing of why he was justified in failing
    to avoid mistake or inadvertence.  Gross carelessness is not enough. . . .  Ignorance of the rules
26   is not enough, nor is ignorance of the law.  Voluntary action also may estop a party from seeking
    relief on the ground of mistake . . . .") (footnotes omitted).

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 17

01 information to HSS,[2]  AMCO does not allege that Wilson was unavailable during this period or

02 could otherwise not be reached.  It simply cannot be said that this information was new,

03 unknown, or could not have been discovered and addressed by AMCO much earlier, through

04 reasonable diligence.

05         4.    *Alternatively, Wilson's Second Declaration Does Not Salvage AMCO's*
            *Position or Otherwise Create a Genuine Issue of Material Fact*

06

07      Assuming *arguendo* that the Court found the elements of Rule 58(e) and/or 60(b) met

08 in this case, it would nevertheless deny AMCO's motion for reconsideration for want of a

09 genuine issue of material fact presented by Wilson's new declaration.  Specifically, the Court

10 would deem the "new" evidence presented by Wilson's second declaration a "sham" under the

facts of this case and controlling Ninth Circuit law.

11

12      As a general rule, "a party cannot create an issue of fact by an affidavit contradicting his

13 prior [sworn] testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

14 If the opposite were true, such tactics "would greatly diminish the utility of summary judgment

15 as a procedure for screening out sham issues of fact" and would allow an easy avenue for

16 parties to attack valid judgments.  *Id.* (citations omitted).  Summary judgment would become a

mere procedural detour.

17

18      There is a difference, however, between contradiction and sham.  Contradictory

19 testimony is not a sham where it is "the result of an honest discrepancy, a mistake, or the result

20 of newly discovered evidence."  *Id.*  Therefore, before a district court disregards a

21 contradictory affidavit, it must make "a factual determination that the contradiction was

actually a 'sham.'"  *Id.*

22

23      Here, the Court cannot conclude that the facts presented by the recent declaration

24

25    [2]  Despite the fact that AMCO had a valid telephone number for Wilson, AMCO failed to
provide this contact information in its initial disclosures, in response to HSS's discovery requests,

26 or in response to plaintiff's counsel's later, specific request. *See* Dkt. No. 68 at 1-2.  As a result,
HSS was unable to contact Wilson until three days before the discovery deadline and was forced
to cancel his deposition. *Id.* at 2.

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 18

01  submitted by AMCO was "the result of an honest discrepancy, a mistake, or . . . newly

02  discovered evidence." *Id.* As explained above, it was not an honest discrepancy or mistake

03  because Wilson, an experienced insurance adjuster, viewed the statements at issue through five

04  correspondences, three revisions, and a signed fax. He had more than ample time to review the

05  contents of his declaration. He signed it under the penalty of perjury. *Cf. Skagit State Bank v.*

06  *Rasmussen*, 109 Wash.2d 377, 381, 745 P.2d 37, 39 (1987) ("One cannot, in the absence of

07  fraud, deceit or coercion be heard to repudiate his own signature voluntarily and knowingly

08  fixed to an instrument whose contents he was in law bound to understand."). Furthermore, the

09  statements were not the result of newly discovered evidence. As noted above, these

10  statements were, or could have been discovered, addressed, and brought to the Court's

11  attention much earlier, through reasonable diligence.

12          Accordingly, and in light of the balance of the evidence in this case, Wilson's second

13  declaration fails to create a genuine issue of material fact regarding whether the "total loss"

14  statement and similar representations were ever made. *See Saunders*, 113 Wash.2d at 340, 779

15  P. 2d at 255 (holding that equitable estoppel requires "an admission, statement, or act

16  inconsistent with the claim afterwards asserted"). Summary judgment therefore remains

17  appropriate on the issue of equitable estoppel.

                         C.      Defendant's Motion for Partial Summary Judgment

19          AMCO has filed a motion for partial summary judgment seeking to dismiss any claims

20  for lost profits incurred after September 12, 2006, on the basis of inadmissible expert testimony

21  and a lack of proof that the alleged lost profits are a direct result of AMCO's conduct.

22  Specifically, AMCO insists that summary judgment is appropriate because HSS has (1)

23  produced no evidence demonstrating that its alleged lost profits damages were caused by

24  AMCO's conduct; (2) failed to timely disclose necessary expert witness testimony regarding its

25  calculation of alleged lost profits; (3) failed to provide AMCO with the documentation upon

26  which the alleged lost profits damages calculations are based; and (4) untimely disclosed an

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 19

01  expert's opinion that is both irrelevant and methodologically flawed.  Dkt. No. 46.  The Court

02  addresses each of these arguments in turn.

1.   *Evidence that AMCO's Conduct Caused HSS's Lost Profits*

04          AMCO asserts that summary judgment is proper regarding plaintiff's claim for lost

05  profits beyond September 12, 2006, because plaintiff has proffered no evidence whatsoever on

06  causation, i.e., a genuine issue of material fact linking AMCO's acts and the consequences of

07  those acts to quantifiable monetary losses incurred by HSS.  Dkt. No. 46 at 9-10.  AMCO

08  claims that HSS, through Howard and Lucurell, merely recites a list of occurrences that bear no

09  "direct connection" between HSS's alleged lost profits and AMCO's alleged conduct.  *Id.*

10  According to AMCO, this evidence fails because Washington law requires the insured to prove

11  that it incurred losses as a "direct result" of the insurer's alleged breach of contract and/or bad

12  faith.  *Id.* at 9 (citing *Coventry Assocs. v. American States Ins. Co.*,136 Wash.2d 269, 285, 961

13  P.2d 933, 940 (1998)).

14          The Court disagrees.  Washington law does not mandate a "direct result" test or require

15  that certain of AMCO's acts of bad faith caused a certain specific amount of monetary

16  damages,[3] particularly for purposes of summary judgment.  Such an approach would not

17  comport with "the long-held view that a defendant should not profit from the difficulty in

18  proving exact damages, particularly if his breach contributes to that difficulty."  *Milgard*

19  *Tempering, Inc. v. Selas Corp.*, 902 F.2d 703, 710 (9th Cir. 1990) (citing *Butcher v.*

20  *Garrett-Enumclaw Co.*, 20 Wash.App. 361, 374, 581 P.2d 1352, 1361 (1978).  Rather, under

21  Washington law, the insured must simply establish a genuine issue of material fact that the

22  insurer's conduct was *one* of the causes of its lost profits.  *See, e.g.*, *Alpine Indus., Inc. v.*

23

24

25          [3]  Contrary to the quotation in defendant's brief, the court in *Coventry Associates* did
    not use the term "direct result" in its ultimate holding.  Only the term "result" was used.   *See*
26  *Coventry*,136 Wash.2d at 285, 961 P.2d at 940 ("We hold Coventry is not entitled to coverage
    by estoppel or a return of a portion of its premium but that its damages are limited to the amounts
    it has incurred as a result of the bad faith investigation, as well as general tort damages.").

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 20

01 *Gohl*, 30 Wash.App. 750, 755, 637 P.2d 998, 1002 (1981) ("If the plaintiff proves that the

02 defendant's fault was *a cause* of lost profits, the plaintiff is not required to prove the entire loss

03 was due to the defendant's fault.") (emphasis added).

04       HSS has done so here, as evidenced by the detailed information set forth in its response

05 to AMCO's motion for partial summary judgment. *See* Dkt. No. 54 at 5-7. The testimony of

06 Rad Howard, along with HSS's responses to discovery, set forth genuine issues of fact that had

07 AMCO accurately stated the limits of the policy, adequately investigated the loss,

08 communicated in good faith with HSS, and timely made payments under the policy, HSS would

09 have been able to return to its pre-fire projected profit levels by the time it moved back to its

10 former location, using Ms. Thompson's calculations regarding profit growth and expenses.

11 Howard Decl. ¶ 10; Dkt. No. 49, Ex. B. However, because none of this was done, HSS was

12 forced to attempt to recover from the fire without adequate funding. *Id.*

13       Through Howard, HSS has presented evidence on which a reasonable jury could find

14 that AMCO's delays and other failures resulted in HSS being inadequately funded far beyond

15 September 12, 2006, which led to lost customers, vendors, distributors, and lost profits, based

16 on HSS's (1) inability to replace its inventory of tires, auto parts, tools, and equipment; (2)

17 inability to replace its computers (halting or interrupting the amount and flow of work); (3) loss

18 of all its "Class A" level qualified mechanics (who decided to leave "because of frustration with

19 not having necessary tools and equipment"); (4) loss of workforce; (5) inability to advertise,

20 hold events, or otherwise inform customers that it was still in business; and (6) inability to pay

21 vendors or distributors in a timely fashion. Howard Decl. ¶ 9; Dkt. No. 49, Ex. B at 13-15.

22 HSS has set forth a triable issue that these consequences were caused not by the fire, but by

23 AMCO's wrongful conduct. *See Alpine Indus.*, 30 Wash.App. at 755, 637 P.2d at 1002

24 (requiring insurer to be "a cause," not *the* cause, of lost profits). Summary judgment is

25 therefore inappropriate on the issue of causation of damages.

26

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 21

01          2.      *Necessity of Expert Testimony*

02          AMCO asserts that summary judgment is proper regarding plaintiff's claim for lost

03 profits beyond September 12, 2006 because plaintiff failed to timely disclose necessary expert

04 witness testimony regarding the calculation of HSS's alleged lost profits damages under Fed. R.

05 Civ. P. 26(a)(2)(B).  Dkt. No. 46 at 11-15.  AMCO asserts that both Howard's testimony and

06 Lucurell's testimony establishing the lost profits incurred post-September 12, 2006 is

07 inadmissible because such information must come from an expert witness. *Id.* at 12. (citing

08 *Matsura v. E.I. du Pont De Nemours and Co.*, 2007 WL 433115, at *2 (D. Haw. Feb. 2, 2007)

09 (ruling that non-retained percipient experts may not render opinions based on information

10 outside of their personal knowledge without timely filing expert reports).  Further, it argues

11 that HSS used incorrect calculations to determine post-September 2006 damages.

12          The Court disagrees.  HSS does not need an expert to submit the evidence of lost

13 profits.  There are three elements necessary to establish lost profits: the profits "(1) are within

14 the contemplation of the parties at the time the contract was made, (2) are the proximate result

15 of the defendant's breach, and (3) they are proven with reasonable certainty." *Larsen v.*

16 *Walton Plywood Co.*, 65 Wash.2d 1, 14, 390 P.2d 677, 687 (1964).  The third element,

17 reasonable certainty, "is concerned more with *the fact of damage than with the extent or*

18 *amount of damage*." *Mildgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 710

19 (1990) (citing *Alpine Indus., Inc. v. Gohl*, 30 Wash.App. 750, 755, 637 P.2d 998, 1002

20 (1981)).  Whether there is "reasonable certainty" can be influenced by the testimony of an

21 expert. *See Larsen*, 65 Wash.2d at 17, 390 P.2d at 687 (explaining that expert testimony alone

22 can suffice to award lost profit damages).  However, other non-expert testimony can meet the

23 reasonable certainty requirement when there is sufficient factual data to calculate the losses:

24 "Lost profits will not be denied where factual data is presented as a basis for computing

25 probable losses." *Tiegs v. Watts*, 135 Wash.2d 1, 18, 954 P.2d 877, 886 (1998).

26

01      HSS has submitted evidence of reasonable certainty of lost profits for the post-

02  September 2006 period.  The company's profit history, the company's projected profit levels

03  for this period, and testimony regarding the impact of AMCO's conduct establish lost profit

04  damages.  *See, e.g.*, Howard Decl., ¶¶ 9-11, 13; Denton Decl. at 63-107.  This evidence was

05  provided in testimony by both Howard and Lucurell over the course of discovery.  AMCO

06  argues that Lucurell could only testify to matters within his own personal knowledge as a lay

07  witness and that this would not include his knowledge of the calculations of lost profits he and

08  Howard completed.  Dkt. No. 46 at 12.  However, Lucurell was only applying simple

09  calculations within his competency as a public adjustor.  Further, the supplemental report of

10  Lucurell clarifies that he extended financial data for the post-September 2006 period by

11  applying the 13.04 percent growth rate established by AMCO's experts, RGL Forensics, for the

12  September 2005 to September 2006 period, which AMCO has also relied on.  Dkt. No. 54, at

13  9.  This testimony is admissible as lay witness testimony.

14      AMCO's motion for partial summary judgment fails to even mention, much less attack,

15  the testimony of Howard.  In its reply brief AMCO argues that the portion of Howard's

16  testimony used to justify the application of the September 2005 to September 2006 calculations

17  to the post-September 2006 period is inadmissible because it is beyond the scope of proper lay

18  witness testimony.  AMCO argues these calculations require specialized knowledge and thus

19  expert testimony.  Dkt. No. 61 at 4-6, 11.  In AMCO's view, Howard's testimony regarding

20  the impact of AMCO's alleged misconduct is improper as expert testimony because he is not an

21  expert and his testimony is therefore subject to lay opinion limitations which must be "(a)

22  rationally based on the perception of the witness, and (b) helpful to a clear understanding of the

23  witness' testimony or the determination of a fact in issue, and (c) not based on scientific,

24  technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

25      The Court finds that Howard's testimony is admissible as lay opinion testimony.  An

26  expert witness is helpful but not necessary in establishing damages for lost profits.  *The Eagle*

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 23

01 *Group, Inc. v. Pullen*, 114 Wash.App. 409, 419, 58 P.3d 292, 298 (2002).  To this end,

02 Washington courts permitted testimony of a business owner to establish lost profits when

03 testifying in his ordinary scope of business.  *See Tiegs*, 135 Wash.2d at 18, 954 P.2d at 886

04 (admitting testimony of respondent commercial farmers regarding their losses from a breached

05 contract).

06         AMCO looks to the Tenth Circuit case of *LifeWise Master Funding v. Telebank* for

07 support of its view that Howard's testimony is inadmissible for want of sufficient personal

08 knowledge.   Dkt. No. 61, at 5.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928

09 (10th Cir. 2004).  *LifeWise* describes two circumstances in which business owners may provide

10 lay opinion testimony regarding lost profits:  first, when the business owners had "sufficient

11 personal knowledge of their respective businesses *and* of the factors on which they relied to

12 estimate lost profits" and second, where "owners offered valuations based on straightforward,

13 common sense calculations."  *LifeWise*, 374 F.3d at 929-30.

14         However, Howard's testimony is distinguishable from the company president in

15 *LifeWise*, and that case is therefore not persuasive.  In *LifeWise*, the company president's

16 testimony was not admissible because it was beyond the scope of a lay opinion and he was not

17 an expert.  The witness did not have personal knowledge of factors used to estimate the

18 damages and wandered into testimony evaluating complex calculations the court deemed to be

19 "an amalgam of logic, hope, and economic jargon."  *Id.* at 930.  However, the court qualified

20 that the president could have given a "straightforward opinion as to lost profits using

21 conventional methods based on LifeWise's actual operating history."  *Id.*  Here, given that

22 Howard was providing testimony regarding his personal experiences as one of the owners of a

23 business that has suffered a loss, that HSS relied on the conservative estimates of RGL

24 Forensics as a measure for growth, and that a person of ordinary knowledge could come up

25 with similar figures given these variables, Howard's testimony qualifies as lay opinion testimony

26

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 24

01  under Fed. R. Evid. 701.  Thus he is not required to meet the standards for expert testimony in

02  Fed. R. Evid. 702.

03  Lastly, AMCO argues that summary judgment is proper because the post-September

04  2006 lost profits calculation cannot be calculated from the formula used for the policy coverage

05  period of September 2005 to September 2006.  Dkt. No. 61 at 4-6, 10-12.  This argument fails

06  because there is a genuine issue of fact regarding how to calculate the damages.  AMCO asserts

07  that HSS's calculation does not provide a basis for estimating what HSS would have earned but

08  for its alleged wrongful conduct.  AMCO argues that the post-September 2006 lost profits

09  must calculate damages using a different variable representing how HSS would have performed

10  after the fire if its insurance claim had been handled in good faith.  Dkt. No. 61 at 4.  AMCO

11  argues that such a calculation requires that an expert witness must "draw on general knowledge

12  and experience of how businesses recover from disruption caused by comparable but properly

13  handled, insured losses and apply that knowledge and experience to HSS's situation."  *Id*.

14  According to AMCO, because it did not cause the fire, it cannot be held accountable for the

15  lost profits HSS suffered beyond the policy coverage commitments.

16  However, a key question presented in this case is whether AMCO's conduct hindered

17  HSS's ability to recover from the fire in a timely manner.  HSS relies on its insurance policy to

18  put it in the same place it would be but for the fire.  Asserting that the damages resulting from

19  AMCO's misconduct are tied to the policy expectations of HSS's ability to recover quickly

20  from the fire, HSS uses the same variables that RGL Forensics provided for the year of policy

21  coverage dates to calculate lost profits through the date of trial.   Both sides are entitled to

22  present their evidence, and any problems AMCO may have with HSS's calculations may be

23  addressed at trial.  As the Ninth Circuit held in a case regarding disagreement concerning lost

24  profit damages, "its recourse is not exclusion of the testimony, but, rather, refutation of it by

25  cross-examination and by the testimony of its own expert witnesses."  *Humetrix, Inc. v.*

26  *Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) (holding that the district court did not

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 25

01  abuse its discretion in allowing the jury to weigh conflicting testimony regarding lost profit

02  damages).

03       The testimonies establishing the lost profits of the post-September 2006 period are

04  admissible, and there is clearly a genuine issue of material fact regarding how to calculate such

05  damages.  Accordingly, summary judgment is not proper.

06                    3.      *Timeliness and Completeness of HSS's Expert Disclosure*s

07       AMCO next asserts that it is entitled to summary judgment because HSS filed its

08  "supplemental" expert report on lost profits three weeks after the expert disclosure deadline

09  and eleven days before the discovery cutoff.  *See* Dkt. No. 49., Ex. I (Lucurell Supp. Report).

10       As noted above, however, the parties agree that Mr. Lucurell was not a witness paid,

11  "retained or specially employed to provide expert testimony" under Fed. R. Civ. P. 26(a)(2)(B).

12  Furthermore, even if a timely expert report were required, the sanction of excluding Lucurell's

13  supplemental report, filed twenty-one days late, is not appropriate in this case, particularly

14  considering the wide latitude afforded the district court in applying the five-factor test

15  articulated in *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.1990).  *See Wendt v. Host*

16  *Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).  Finally, as a less drastic and more appropriate

17  sanction in this case, this Court has already provided AMCO additional time to adjust the

18  report of its expert, Katharyn Thompson, so that it might rebut the information provided by

19  Lucurell's supplemental report.  *See* Dkt. No. 62 at 2 ("If defendant wishes to supplement the

20  report of its expert Katharyn Thompson, beyond what is included in paragraphs 8-10 of her

21  declaration (Dkt. No. 52), defendant will have until April 7, 2008 to do so.").   This

22  opportunity would sufficiently counteract any surprise, prejudice, or other harm alleged by

23  AMCO.  When viewing the facts in a light most favorable to HSS, as this Court is required to

24  do, summary judgment is inappropriate on AMCO's timeliness argument.[4]

25  _____

26       [4] Furthermore, the parties vigorously dispute the facts regarding whether HSS failed to
meet its burden of producing all evidentiary material on which its damages computation was based.
*Compare* Dkt. No. 56 at 66-107, 135, *with* Dkt. No. 46 at 15-16, Dkt. No. 61 at 10. Summary

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 26

01

VII.   CONCLUSION

02         For the foregoing reasons, plaintiff's Motion for Partial Summary Judgment Regarding

03 Coverage for Contents (Dkt. No. 47) is GRANTED and defendant's Motion for

04 Reconsideration (Dkt. No. 63) is DENIED.  Furthermore, defendant's Motion for Partial

05 Summary Judgment to Dismiss Claim for Lost Profits Incurred After September 12, 2006 (Dkt.

06 No. 46) is DENIED.  The Clerk of Court is directed to send a copy of this Order to the parties

07 of record.

08         DATED this 16th day of April, 2008.

09

10                                                  _____

11                                                  JAMES P. DONOHUE
                                                    United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26         _____

judgment is therefore inappropriate on this procedural irregularity argument as well.

ORDER ON CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT
PAGE – 27